FRANK KERTING

*v.*

WILLIAM K. HILTON.

*Filed at Ottawa October 29, 1894.*

1. DURESS—*does not exist where party is free to act.* A party in his right mind and in control of his faculties, who understands what he is doing, and has full power to sign a paper or refuse, is not under duress.

2. MORTGAGE—*deed not held to be, where the interests are expressed.* Where the interests of both parties in property are fully expressed in a written instrument they will be presumed to be the actual and entire interests, and oral testimony will not be received to vary the terms of the instrument unless fraud is shown.

3. When such facts appear, an instrument absolute on its face will not be held to be a mortgage.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. LORIN C. COLLINS, Judge, presiding.

Messrs. BARNUM, HUMPHREY & BARNUM, for the appellant :

The law of duress is well understood, and has been often administered by the court. We need only cite a few authorities in deference to the rules of court appertaining to briefs : *Brown* v. *Gaffney*, 28 Ill. 149 ; *Tennery* v. *Nicholson*, 87 id. 464 ; *Scanlan* v. *Scanlan*, 134 id. 645 ; *Conant* v. *Riseborough*, 139 id. 388; *Russell* v. *Southard*, 12 How. 139 ; *Peugh* v. *Davis*, 96 U. S. (6 Otto,) 332 ; *Brick* v. *Brick*, 98 id. (8 Otto,) 516 ; 1 Jones on Mortgages, secs. 273, 293 ; 2 id. secs. 1039, 1042 ; Story's Eq. Jur. sec. 222 ; 2 id. sec. 1019 ; *Preschbaker* v. *Feaman*, 32 Ill. 475 ; *Bearss* v. *Ford*, 108 id. 16 ; Beach's Eq. Jur. secs. 407, 412, 413, 416 ; *Hayworth* v. *Worthington*, 5 Blackf. 361.

Messrs. FLOWER, SMITH & MUSGRAVE, for the appellee :

If a written agreement appears upon its face to be clearly a mortgage, or a sale with a right to repurchase, parol evidence is not admissible to change its character. *McKinstry* v. *Conley*, 12 Ala. 678.

To establish that a transfer absolute on its face was in fact a mortgage, the proof must be clear and convincing. The question is one of the intention of the parties. *Eames* v. *Hardin*, 111 Ill. 634 ; *Purington* v. *Akhurst*, 74 id. 490 ; 1 Beach's Eq. Jur. sec. 414.

The intention and understanding of both parties to such instrument must be shown to have concurred. The fact, however clearly proved, that the grantor alone intended and considered the transaction a mortgage, is insufficient to make it a mortgage. *Vincent* v. *Walker*, 86 Ala. 333 ; 1 Beach's Eq. Jur. sec. 414.

If there be no debt due from the grantor to the grantee, there can be no mortgage. *Rue* v. *Dole*, 107 Ill. 275 ; *Vincent* v. *Walker*, 86 Ala. 333 ; *McKinstry* v. *Conley*, 12 id. 478 ; *McGee* v. *Catching*, 33 Miss. 672.

Nor can the mere reservation of the right to redeem upon paying a certain sum by a fixed day, convert an instrument into a mortgage, there being no debt or binding obligation on the part of the grantor to redeem. *Vincent* v. *Walker,* 86 Ala. 333.

The rights of the parties to the conveyance must be reciprocal. If it be a conditional sale, so that the grantor need not repurchase except at his option, the grantee cannot insist upon repayment. 15 Am. & Eng. Ency. of Law, 782.

The fact that the original transaction was in the nature of a loan is not conclusive, nor does the rule, once a mortgage always a mortgage, control the transaction. *Quick* v. *Rodman,* 5 Duer, 285 ; *Moss* v. *Green,* 10 Leigh, 251; *McKinstry* v. *Conley,* 12 Ala. 478.

Mr. CHIEF JUSTICE WILKIN delivered the opinion of the court :

This is a bill by appellant, against appellee, to have a certain contract of sale declared a mortgage, and to be allowed to redeem the property thus described. The contract is in the following language :

"WHEREAS, the undersigned, William K. Hilton, did, on the fourth day of December, 1890, purchase of I. G. Hatcher a certain lithographing plant situated in the rear of numbers 51 to 55 Dearborn street, Chicago, Illinois, in which bill of sale it was represented that said property was taken in trust for the undersigned, Frank Kerting ; and whereas, some controversy has arisen between the undersigned on the subject of said purchase :

"Now, therefore, this agreement witnesseth, that in settlement of all the matters now existing between the parties it is agreed as follows, to-wit :

"*First*—That the said Hilton is hereby declared to be the absolute owner of the said property, freed from any trust in favor of said Kerting.

"*Second*—That the said Hilton hereby agrees to sell and deliver the said plant, with all accretions arising out of the business, to said Frank Kerting, for the sum of six thousand dollars ($6000), to be paid at any time on or before the fourth day of March, 1891, together with or in addition to all sums of money that said Hilton may in the meantime advance to or invest in the business of running the said lithographing plant.

"*Third*—In the meantime the said business shall be carried on by the said Hilton, who shall furnish a competent cashier and book-keeper, who shall have control of the financial part of said business, and whose salary, not exceeding fifteen dollars ($15) per week, shall be charged as an expense in said business.

"*Fourth*—The undersigned, Frank Kerting, shall be employed in said meantime at a salary of twenty-five dollars ($25) per week, to be paid weekly, and purchases of materials for the conduct of the business shall either be made by the said Kerting, or subject to his approval.

"*Fifth*—There shall be allowed to said Hilton eight per cent (8%) per annum interest on any money that he may advance to said business for the conduct thereof, and in addition thereto, the sum of twenty-five dollars ($25) per week for any time that he may be required to spend about said business, to be charged to the expense thereof.

"*Sixth*—In addition to the items herein specified, of the salary to said Kerting, the money to be advanced by the said Hilton to carry on said business, with the interest thereon, and the salaries of the said cashier and of the said Hilton, all the usual and ordinary expenses in and about the business shall be charged to the expense thereof, in any accounting for the purpose of ascertaining the profits hereunder.

"*Seventh*—The said Kerting shall, during the meantime, —that is to say, up to said March 4, 1891, or until he may purchase the said plant hereunder, if he shall do so prior to said date,—be entitled to two-thirds of the net profits

of the said business, and the said Hilton shall be entitled to the remaining one-third of said profits, in addition to the purchase price hereinbefore mentioned.

"*Eighth*—Time is hereby declared to be the essence of this agreement, and in 'case said Frank Kerting shall fail to comply herewith, or to purchase the said plant on or before the said fourth day of March, 1891, and pay therefor in cash, as per this contract, then and thereupon he shall forfeit any and all right, claim, demand or interest in and to this contract, or in and to the said plant and property, excepting only the salary and profits hereinbefore reserved to him.

"*Ninth*—In case the said Kerting shall fail or neglect to devote his time assiduously to the best interests of the said business, and in and about the same, or in case the said business shall become manifestly unprofitable, the said Hilton shall have the right to cease operations and the running of the said plant.

"Witness the hands and seals of said Frank Kerting and William K. Hilton, this thirteenth day of December, A. D. 1890.          FRANK KERTING,          [Seal.]
                                           WILLIAM K. HILTON.          [Seal.]"

Appellee was in the exclusive possession of the property mentioned in this contract at the time of its execution, and so remained to the time of filing this bill.

The bill is drawn upon the theory that this instrument, under which appellee holds the property, constitutes a mortgage, and that it was procured from appellant by duress. Possession of personal property is *prima facie* evidence of ownership. The title indicated by the possession of appellee in this case is strengthened by the contract executed by appellant, releasing the trust then existing and declaring absolute ownership in appellee, with his offer of re-sale on certain agreed terms. The agreement of December 13, 1890, is a clear, unambiguous statement of the contract between the parties, and neither

requires nor admits of construction. It is signed by the parties, and is conclusive upon them as to their relations to this property, unless shown to have been procured by such duress or fraud as will vitiate it.

We find nothing in the record indicating that appellant signed the contract under compulsion. The only thing complained of is, that defendant threatened to exercise what was assumed by the parties to be his legal right. No claim is made that appellant did not fully know and understand what he was doing, was not in his right mind, in control of his mental faculties, with full power to sign the contract or refuse to do so. He was therefore under no duress, within the meaning of the law. *Stover* v. *Mitchell*, 45 Ill. 213 ; *Brower* v. *Callender*, 105 id. 88.

Neither can the instrument be construed to be a mortgage. Where the evidence is clear that a deed absolute was intended by the parties to be a mere security for the payment of an indebtedness, it may be held to be a mortgage. But the instrument under consideration set aside or superseded an instrument showing an interest of appellant in the property and declared the title absolute in appellee, with an agreement on his part to sell back to appellant within a certain time, upon payment of an agreed price. There was no agreement on the part of appellant to buy, and he did not bind himself to appellee in any way whatever. The terms of the contract reserved to him the right to re-purchase the property within a time specified, and nothing more. Where an interest of either party in the property is expressed in a written instrument, it will be presumed that the actual and entire interest is expressed, and oral testimony will not be received to vary the terms of the instrument, there being no fraud shown. There was no debt of appellant to appellee, and there can be no mortgage without an indebtedness to support it. *Eames* v. *Hardin*, 111 Ill. 634; *Rue* v. *Dole*, 107 id. 275.

There is much force in the holding of the Appellate Court that the agreement amounted to no more than a mere option to appellant to purchase the property within a certain time, and that it was therefore void. But independently of that consideration, treating the contract as mutual between the parties, appellant shows no right to the relief prayed, having wholly failed to prove performance of the terms of the agreement, or an offer to perform, on his own part.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*